**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Robin Lynn Robbins,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-12-8056-PCT-GMS (JFM)<br><br>**Report & Recommendation On Petition**<br>**For Writ Of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona Department of Corrections, filed through retained counsel a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 26, 2012 (Docs. 1, 2, 3).  On June 21, 2012, Respondents filed their Answer (Docs. 11, 12, 13, 14, 15, 16, 17, 18, 19).  Petitioner has not replied.

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

On December 31, 2004, Petitioner was driving on a highway near Cottonwood, Arizona, repeatedly crossed the centerline and eventually struck an oncoming vehicle head on.  Ultimately, four vehicles were involved in the collision, four people died, three others and Petitioner were injured.  Petitioner was found to have a used methamphetamine pipe in his pocket, methamphetamine in his vehicle, and

1

methamphetamine in his system.  (Exhibit Y, Presentence Report at 5-6; Exhibit X, Defendant's Present. Memo. at 2-4.)  (Exhibits to the Answer, Docs. 11 *et seq.* are referenced herein as "Exhibit ___." Exhibits to the Petition, Docs. 1 *et seq.* are referenced herein as "Pet. Exhibit ___.")

## B. PROCEEDINGS AT TRIAL

On January 5, 2005, Petitioner was indicted in Yavapai County Superior Court on four counts of second degree murder, three counts of aggravated assault, two counts of misdemeanor DUI, and one count each of endangerment, criminal damage, possession of dangerous drugs, and possession of drug paraphernalia.  (Exhibit A, Indictment.)

During the course of pretrial proceedings, Petitioner filed a Petition for Special Action (Exhibit P), challenging the trial court's refusal to bifurcate the trial and to prohibit introduction of evidence of Petitioner's prior D.W.I. conviction.  The Arizona Court of Appeals granted a stay of proceedings before the jury panel, and directed a response to the petition.  (Exhibhit R, Order 9/22/06.)

On September 29, 2006, Petitioner entered into a written Plea Agreement (Exhibit S), wherein he agreed to plead guilty to the charges, in exchange for dismissal of any allegation of multiple offenses committed on different occasions.  Petitioner entered his plea pursuant to the agreement on September 29, 2006. (Exhibit U.)

On November 17, 2006, Petitioner was sentenced to a combination of presumptive, concurrent, and consecutive sentences for an aggregate of 71.5 years' imprisonment.  (Exhibit AA, Sentence; Exhibit PP, Dec. Order 12/4/08 at 1.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal.  (Petition, Doc. 1 at 4.)

## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

On January 16 17, 2007, Petitioner filed a Notice of Post-Conviction Relief

1  (Exhibit BB). Counsel was appointed and withdrew, and substitute counsel was

2  appointed. (Exhibit CC, M.E. 1/17/07; Exhibit DD, Order 2/13/07.)  On July 3, 2007,

3  counsel filed a PCR Petition (Exhibit EE) arguing: (1) insufficient evidence; (2) plea was

4  not knowingly entered and counsel was ineffective; and (3) sentencing errors.

5      The PCR court summarily denied the Petition on October 30, 2007, finding that

6  the claims were without merit.  (Exhibit LL, M.E. 10/30/07.)

7      Petitioner filed a Petition for Review (Exhibit MM) raising claims of: (1) actual

8  innocence; (2) ineffective assistance of counsel in the plea proceedings; and (3)

9  sentencing errors.  On December 4, 2008, the Arizona Court of Appeals found that the

10  PCR Court had erred in failing to require an evidentiary hearing on Petitioner's actual

11  innocence claims and ineffective assistance claims, and granted relief on those issues.

12  (Exhibit PP, Order 12/4/08.)

13      An evidentiary hearing was held on April 14, 15, 28, 29, 2009, and June 2, 2009.

14  (Exhibit WW, M.E.s.)  On August 13, 2009, the PCR Court rejected the claims of actual

15  innocence and ineffective assistance of counsel, and denied the petition.  (Exhibit XX,

16  M.E. 8/13/09.)

17      Petitioner again filed a Petition for Review (Exhibit YY), arguing the PCR court

18  had applied an incorrect standard to his actual innocence claim, and incorrectly decided

19  the ineffective assistance and voluntariness of the plea claims.  The Arizona Court of

20  Appeal summarily denied review on May 5, 2011.  (Exhibit BBB.)  Petitioner did not

21  seek further review.  (Exhibit DDD, Az. Ct. of App. Docket 1CA-CR-09-0932 PRPC.)

22

23  **E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

24      **Petition** - Petitioner commenced the current case by filing, through counsel, his

25  Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 26, 2012

26  (Docs. 1, 2, 3).  Petitioner's Petition asserts the following two grounds for relief: (1) his

27  plea was involuntary because he received ineffective assistance of counsel; and (2)

28  insufficient evidence to convict.

**Response** - On June 21, 2012, Respondents filed their Response ("Answer") (Doc. 11, 12, 13, 14, 15, 16, 17, 18, 19).  Respondents argue that Grounds One and Two are without merit and that Ground Two was not fairly presented to the state courts as a federal law claim, the state remedies were not properly exhausted, and are now procedurally defaulted.

**Reply** – The Service Order provided: "Petitioner may file a reply within 30 days from the date of service of the answer."  (Doc. 5 at 3.)  Petitioner has not filed a reply, and the time to do so has passed.

## III. APPLICATION OF LAW TO FACTS

### A.  GROUND ONE: VOLUNTARINESS

In his Ground One, Petitioner summarizes his claim as arguing that his plea was involuntary due to counsel's ineffective assistance in advising him "regarding the probable sentence."  (Petition, Doc. 1 at 24.)  The bulk of Petitioner's argument, however, is not that counsel misinformed Petitioner about the probable sentence, but that counsel "did not investigate the case and inform himself of defenses prior to pressuring Mr. Robbins to plead guilty to the indictment."  (*Id.* at 26.)  In that regard, Petitioner argues that counsel: (a) gave incorrect advice about the value of pleading guilty in obtaining concurrent sentences; (b) failed to advise Petitioner about the lack of evidence of impairment; (c) improperly advised Petitioner that no mechanical expert was available to support Petitioner's assertion of steering failure; and (d) improperly advised Petitioner that the case was "not defensible."

Respondents argue that: the PCR court: (1) properly rejected as "not credible" Petitioner's claim of not having been adequately advised about the risks of consecutive sentencing, and properly found no presumption of consecutive sentences applied; (2) properly found that counsel correctly advised Petitioner on the value of pleading guilty as an acceptance of responsibility; (3) properly found evidence sufficient to show "impairment" and not merely "under the influence;" (4) properly found counsel was not

ineffective with regard to an expert, given concerns about the expert proffered by Petitioner, efforts to locate an expert, and the absence of an expert did not preclude asserting mechanical failure at trial; and (5) properly concluded that Petitioner knew there were defenses ready to be presented at trial, and that counsel had not advised Petitioner to plead guilty.

## 1. Standard Applicable on Habeas

While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief.

**Errors of Law** - "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam). To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted. 28 U.S.C. §2254(d)(1).

**Errors of Fact** - Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry his case in the federal courts by presenting new evidence. There is a well-established presumption of correctness of state court findings of fact. This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Credibility Determinations** – At least some of the factual findings made by the state courts and disputed by Petitioner involve credibility determinations. Those determinations are subject to the presumption of correctness and "unreasonable determination" limitations on habeas relief.

> We can think of no sort of factual finding that is more appropriate for deferential treatment than is a state court's credibility determination. "Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."

*Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

**Mixed Questions** – Petitioner contends that the presumption of correctness does not apply to the trial court's finding of voluntariness because it is a finding of law, nor does it apply to the fining of effective assistance of counsel because it is a mixed question of law and fact. (Answer, Doc. 11 at 24.)

"[T]he reach of the presumption of correctness in new § 2254(e)(1) is restricted to pure questions of historical fact. State decisions applying law to facts are governed by § 2254(d)(1); however, factual findings underlying the state court's conclusion on the mixed issue are accorded a presumption of correctness." *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004).

> Consequently, a federal court reviewing a state court conclusion on a mixed issue involving questions both of fact and law must first separate the legal conclusions from the factual determinations that underlie it. Fact-finding underlying the state court's decision is accorded the full deference of §§ 2254(d)(2) and (e)(1), while the state court's conclusion as to the ultimate legal issue — or the application of federal law to the factual findings — is reviewed per § 2254(d)(1) in order to ascertain whether the decision is 'contrary to, or involved an unreasonable application of, clearly established' Supreme Court precedent.

*Id.* at 977-978.

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, Petitioner's claims in Ground One

were arguably raised to the Arizona Court of Appeals in his second petition for review in his PCR proceeding (Exhibit YY).  The Arizona Court of Appeals summarily rejected that petition.  (Exhibit BBB Order 5/5/11.) Accordingly, this Court looks through that appellate Order to the PCR court's order (Exhibit XX), as the last reasoned decision.

In granting, in part, Petitioner's first petition for review, the Arizona Court of Appeals left undisturbed those portions of the PCR court's order not specifically rejected.  "We deny review of all other issues presented in the petition for review." (Exhibit PP, Order 12/4/08.)  Accordingly, this Court looks through that Order to the undisturbed portions of the PCR Court's first dismissal (Exhibit LL).

## 2.  Standard for Voluntariness

Petitioner asserts that his guilty plea was involuntarily entered into.  The Supreme Court has stated that where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. . . . [A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective]." *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (internal quotation marks and citations omitted).

Here, Petitioner was represented by counsel during the plea process and entered his plea upon the advice of counsel.  (*See* Exhibit T, R.T. 9/29/06 at 14.) Accordingly, the voluntariness of his plea turns upon the effectiveness of counsel in advising Petitioner as to the plea.

## 3.  Standard for Ineffective Assistance of Counsel

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, petitioner must show:  (1) deficient performance - counsel's representation fell below the

7

objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687 88, 694.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id*. at 697.

In determining whether counsel performed deficiently, the court must focus on whether the attorney's advice was appropriate under the circumstances existing at the time of the guilty plea.  *See Strickland*, 466 U.S. at 690.

Moreover, there is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.   *United States v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *United States v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

The pleading defendant must prove he was prejudiced from counsel's ineffectiveness by demonstrating a reasonable probability that but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 58 59; *Strickland*, 466 U.S. at 694.  The defendant must show "that but for counsel's errors, he would either have gone to trial or received a better plea bargain." *U.S. v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004).    The Court must assess the circumstances surrounding the case to determine if the petitioner's allegation that he would have proceeded to trial is plausible.  *See United States v. Keller*, 902 F.2d 1391, 1394 95 (9th Cir. 1990)(petitioner failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence; additional information about parole eligibility was unlikely to affect his decision). This is an objective analysis that requires the court to examine what a reasonable person would do "without regard for the idiosyncrasies of the particular decisionmaker." *Hill*, 474 U.S.  at 60 (quoting *Strickland*, 466 U.S. at 695).

## 4. Advice on Possible Sentencing

Petitioner argues that counsel improperly advised Petitioner that his " 'probable sentence' would be between 10 and 16 years with a maximum of 22 years," when in reality he faced up to 147.25 years under the plea agreement.  (Petition, Doc. 1 at 15.) Respondents argue that the state courts found the claim " 'not credible' " and that the record supports the finding.

The PCR court made the following findings:

> The Court finds the testimony of defense counsel Griffen to be credible. Mr. Griffen testified to the effect that although he, Mr. Robbins and the Robbins family were hopeful that the sentences would run concurrently, no guarantees or promises were made in that regard. Mr. Griffen had discussed with Mr. Robbins the risk of consecutive sentencing and the risk of the imposition of very lengthy sentences in general as reflected in Exhibit 10. Mr. Robbins's claim that he did not understand the meaning and risks of consecutive sentencing is not credible. Furthermore, at the change of plea hearing Mr. Griffen appropriately avowed to the Court that he discussed with Mr. Robbins the fact that the sentences could run consecutively in the discretion of the Court. This avowal was not self-serving; rather, it was a proper avowal made in keeping with an attorney's responsibilities as an officer of the court.

(Exhibit XX, M.E. 8/14/09 at 4-5.)

Petitioner makes no argument to show that these credibility determinations and findings of fact are not entitled to a presumption of correctness or that they were "unreasonable determination[s] of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

There is certainly evidence in the record, apart from the testimony at the PCR hearing, which would suggest Petitioner was not informed of the potential for consecutive sentences.

For example:

(1) The referenced Exhibit 10 was a letter written by counsel to Petitioner at the outset of the case, dated September 1, 2005, reviewing the indictment and not the guilty plea.  (Exhibit UU, R.T. 6/2/09 at 81.)  Petitioner did not enter into

9

the guilty plea until over a year later.  (Exhibit S, Plea Agreement.)[1]

(2) Although the Plea Agreement reflected that "each" of the various offenses carried their own applicable sentencing ranges (Exhibit S, Plea Agreement at 3), it included no indication whether the sentences would or could be made consecutive or concurrent.

(3) At the change of plea hearing, the trial court carefully went through the sentencing ranges on each count.  (Exhibit T, R.T. 9/29/06 at 7-10.)  However, at no time did the trial court indicate that the sentences could be made consecutive.  Indeed, the only discussions of consecutive prison sentences in that hearing was trial counsel's succinct advice that he had made Petitioner "aware of the ranges of the punishments that are available, including whether The [sic] Court would exercise it's [sic] discretion and require consecutive or concurrent terms." (*Id.* at 29.)

(4) The sentencing memorandum filed by counsel asked for the imposition of concurrent sentences, and argued that the nature of the offenses as a single act called for the court to impose concurrent sentences.  (Exhibit X, Memo at 10 and n. 6.)

(5) At sentencing, trial counsel continued to argue at length that the sentences on the murder and aggravated assault charges "would have to run concurrently as a matter of law" under the "single act rule." (Exhibit AA, R.T. 11/17/06 at 99-100.)[2]

---

[1]  Indeed, Petitioner dismissed the letter as referencing "that scenario was if I went to trial, not the plea."  (Exhibit UU, R.T. 6/2/09 at 45.)

[2]  Counsel relied upon *State v. Noble*, 152 Ariz. 284, 731 P.2d 1228 (1987) in support of his argument.  Rather than mandating a "single act rule" based upon a single act harming multiple victims, the *Noble* court espoused a single act rule founded upon the Arizona double jeopardy statute's requirement that "if, after eliminating evidence supporting elements of one charge, remaining evidence will not support elements of additional charges" then consecutive sentences could not be applied.  *Id.* at 286, 731 P.3d at 1230. Here, as long determined by state precedent, the additional facts of the separate victims took this case outside that rule. *See State v. White*, 160 Ariz. 377, 380, 773 P.2d 482, 485 (App.1989) ("We conclude that our legislature did not intend § 13–116 [the predecessor

However, none of this indicates that the trial court's election to rely upon trial counsel's "credible" testimony that he had advised Petitioner about the potential for consecutive sentencing, was an unreasonable determination of the facts as required for relief under 28 U.S.C. § 2254(d)(2).

"Challenges under § 2254(d)(2) fall into two main categories. First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012).

Substantial Evidence - Here, the state court's finding was supported by substantial evidence, *i.e.* trial counsel's assurances, both at the change of plea and in the PCR evidentiary hearing, supported by correspondence with Petitioner, that he had advised Petitioner of the potential for consecutive sentencing.

At the change of plea, counsel reviewed the cap on restitution, credit for time served, and then stated:

> I've made it clear to Mr. Robbins that the best he can do under the circumstances of this plea would be a calendar term of 10 years. That's the best that he could do. I've also made him aware of the ranges of the punishments that are available, including whether The [sic] Court would exercise it's [sic] discretion and require consecutive or concurrent terms.

(Exhibit T, R.T. 9/29/06 at 29.)  Petitioner subsequently denied having any questions or wanting time to discuss the matter with counsel.  (*Id.* at 33.)

At the PCR hearing, counsel asserted having repeatedly alerted Petitioner to the potential for consecutive sentencing:

> Q. Right. While you were representing Mr. Robbins, did you ever have a meeting with him or at any point in time in some other fashion and explain to him the possible range of sentences that he was facing for the charges that were against him in this case?
> A.  Yes.
> Q.  Would you tell us how that happened.
> A.  In more than one way. By written correspondence, by

statute] to preclude consecutive sentencing where a convicted defendant has injured more than one individual as a result of his single act.")

personal communication, personally through visitation at the jail in consultation with Mr. Robbins.

* * *

Q. Did you point out to Mr. Robbins in that letter that there was the danger of consecutive sentences for each of those second degree murder charges?

A. Yes. It's directly referred to in paragraph 3 of the letter. Well, actually paragraph 2.

Q. What does it say?

A. I'm quoting again. " . .the potential of not only be consecutive to each other but consecutive to any homicide conviction." I was discussing the four possible homicide charges not only being consecutive to the aggravated assaults and other related charges but consecutive to each other.

* * *

Q. Did you have subsequent conversations with Mr. Robbins about the fact that he was facing the possibility of consecutive sentences?

A. Yes. It was always -- as I've testified previously, the issue of consecutive exposure was obviously the most significant issue associated with the case.

Q. Was that his and, in fact, your major concern in this case, the fact that he was going to risk the possibility of spending the rest of his life in prison?

A. It was always his greatest concern given his family relationships and what he was hopeful to achieve.

(Exhibit UU, R.T. 6/2/09 at 80-85.)

Further, Petitioner wrote the judge in anticipation of sentencing, expressing his hope of a sentence less than effectual life.

Q. And that's why you wrote in your letter here it is. That's why you wrote in your letter to The [sic] Judge that you hope you can give me a sentence where I will have some life left not to die in prison; right?

A. Yeah.

* * *

Q. And that's because you and your mother were concerned that you could receive a sentence as a result of pleading guilty in this case that would cause you to spend the rest of your life in prison; right?

A. Yes.

(*Id.* at 53-54.)

Fact-Finding Process – Petitioner argues that the fact-finding process employed by the PCR court was inadequate. However, Petitioner points to no inadequacy in the process concerning this claim.

Petitioner does assert that because ineffective assistance is a mixed question of law and fact, and the voluntariness of a plea is a legal question, the presumptions of

1  correctness simply don't apply.  (Petition, Doc. 1 at 24.)  That claim is disposed of
2  hereinabove.

3      <u>Sentencing Predictions</u> – Moreover, there is nothing wrong with defense counsel
4  advising a client of the possible consequences of a case.  *See United States v. Ulano*, 468
5  F. Supp. 1054, 1067 (C.D. Cal. 1979), *aff'd*, 614 F.2d 1257 (9th Cir. 1980).  Moreover,
6  in  *U.S. vs. Garcia*, 909 F.2d  1346 (9th Cir. 1990) the Ninth Circuit held that an
7  erroneous prediction of a sentence by a defense attorney did not rise to the level of
8  constitutional deficient representation, and thus did not render a plea based upon such
9  erroneous prediction involuntary.

10      Cases both prior to and since *Garcia* have differentiated between simple errors in
11  predictions and a gross mischaracterization of the likely outcome.  For example, in *U.S.*
12  *vs. Michlin*, 34 F.3d 896 (9th Cir. 1994) the Ninth Circuit recognized that the court has
13  "held that 'an erroneous prediction by defense attorney concerning sentencing does not
14  entitle a defendant to challenge his guilty plea,' although an exception might be made in
15  a case of 'gross mischaracterization of the likely outcome.'" *Id*. at 899 (citations
16  omitted).

17      In *Iaea vs. Sunn*, 800 F.2d 861(9th Cir. 1986) defense counsel represented to the
18  defendant that a guilty plea would give him a chance to receive probation.  That advice
19  was defective because of mandatory minimum sentences which resulted in his receiving
20  life sentences. The court found that such a gross mischaracterization (probation v. life
21  sentences), coupled with inaccurate advice on the effects of going to trial, established
22  defective performance by counsel and remanded the case for a determination on the
23  prejudice component of the ineffective assistance claim. *Id*. at 865-66.  *See also*
24  *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990), cert. denied, 499 U.S.
25  940 (1991)(no ineffectiveness where actual sentence was three years longer than attorney
26  predicted).

27      In contrast, in *Womack v. Del Papa*, 487 F.3d 998 (9th Cir. 2007), counsel had
28  predicted a sentence upon pleading guilty of 30 to 40 years, and instead the defendant

received eight life terms without parole.  The Ninth Circuit distinguished *Iaea*, and found the plea nonetheless voluntary.

Here, Petitioner makes no contention that he was unaware at the time of his guilty plea that he faced a substantial sentence.

> Q.   Okay.   And you were hoping to get a sentence in the range of 10 years to 22 at a maximum, right?
> A.   Yes.

(Exhibit UU, R.T. 6/2/09 at 51.)

> Q.   Did Mr. Griffen ever tell you about a sentence range of 10 years, at a minimum 16 years 18 presumptive, 22 years a maximum?
> A.   At the plea?
> Q.   At the plea.
> A.   That's what he said the plea was.
> Q.   So he told you that at the time of the change of plea; is that correct?
> A.   10 to 16 to 22. Yeah

(Exhibit UU, R.T. 6/22/09 at 45.)   Instead of a purported 22 years as a maximum, Petitioner received an effective sentence of 71.5 years.

Thus, this case (22 years v. 71.5 years) is farm more akin to *Womack* (40 years v.8 life sentences) than *Iaea* (probation v. life plus) in terms of the disparity between the advice and the result. Moreover, unlike in *Iaea*, Petitioner has not shown patently erroneous advice.  To be sure, Petitioner argues counsel's error of the effect of the guilty plea, but as discussed hereinafter, that argument is unsupported by state law and is without merit.

Conclusion re Sentencing Predictions – Petitioner has failed to show that the PCR court's finding that counsel properly advised Petitioner as to his exposure to consecutive sentencing was an unreasonable determination of the facts.  On the basis of those facts, the PCR court's conclusion that Petitioner failed to show his plea was involuntary as the result of ineffective assistance of counsel must be found to be a correct application of federal law.  Moreover, even if this Court could reject that factual finding, the disparity between counsel's purported advice and the result at sentencing were not so great as to invalidate Petitioner's plea.  Accordingly, this claim must be denied.

## 5.  Advice on Value at Sentencing of Pleading Guilty

Petitioner next contends that counsel misrepresented to Petitioner that his acceptance of responsibility by pleading guilty was a "key factor" at sentencing and would allow counsel to argue for the imposition of concurrent sentences. Petitioner argues that counsel could have argued acceptance of responsibility with or without a guilty plea, and the existence of multiple victims created a presumption under state law for the imposition of consecutive sentences.  (Petition, Doc. 1 at 25.)

The PCR Court made the following findings:

> The Court finds the testimony of defense counsel Griffen to be credible. Mr. Griffen testified to the effect that although he, Mr. Robbins and the Robbins family were hopeful that the sentences would run concurrently, no guarantees or promises were made in that regard. Mr. Griffen had discussed with Mr. Robbins the risk of consecutive sentencing and the risk of the imposition of very lengthy sentences in general as reflected in Exhibit 10. Mr. Robbins's claim that he did not understand the meaning and risks of consecutive sentencing is not credible. Furthermore, at the change of plea hearing Mr. Griffen appropriately avowed to the Court that he discussed with Mr. Robbins the fact that the sentences could run consecutively in the discretion of the Court. This avowal was not self-serving; rather, it was a proper avowal made in keeping with an attorney's responsibilities as an officer of the court.

(Exhibit XX, M.E. 8/13/09 at 4.)

Petitioner offers nothing to explain why the PCR court's conclusion that Petitioner had been properly advised was incorrect.

Petitioner does revert to an earlier attack, arguing that counsel's error arose specifically in advising that consecutive sentencing could be avoided *only* by pleading guilty.  In disposing of this claim in its earlier dismissal of the Petition, the PCR Court held:

> In the Petition for Post-Conviction Relief the Defendant claims that his trial counsel was ineffective by "failing to advise Robin that under Arizona law multiple crimes presumptively run consecutive to each other, that case law supports running multiple victims crimes consecutive to each other and that there was a possibility the court would sentence him to what amounts to the rest of his life in prison." Petition for PCR, p. 14. The Defendant also acknowledges, however, that AR.S. § 13-708 does not create a presumption in favor of consecutive sentencing. Petition for PCR, p. 19. *See State v. Garza*, 192 Ariz. 171,962 P.2d 898 (1998). This Court is, and was at

15

the time relevant to this proceeding, aware that AR.S. § 13-708 does not create a presumption favoring consecutive sentences. This Court in no manner regarded itself constrained by the language contained in AR.S. § 13-708 to impose consecutive sentences. Defense counsel's statement at the change of plea hearing concerning the discretion of the court at sentencing was correct.

(Exhibit LL, M.E. 10/30/07 at 2.)

    <u>No Presumption of Consecutive Sentence</u> - Indeed, state authorities had long plainly held that Ariz. Rev. Stat. § 13-708 did not create a presumption in favor of consecutive sentences:

Section 13-708 neither creates a presumption for consecutive or concurrent sentences, nor imposes any restrictions on a trial court's discretion in choosing between consecutive or concurrent sentences. Because section 13-708 creates no presumption in favor of one type of sentencing structure over the other and acts as a default statute solely applicable in the event that a judge fails to designate a particular structure at the time of sentencing, it is immaterial that the legislature did not include any reference to this section within section 13-502(D).

*State v. Ward*, 200 Ariz. 387, 388-89, 26 P.3d 1158, 1159-60 (Ariz.App. 2001) (citing *Garza*). Notwithstanding the decision of the trial court in this matter, and the plain holdings of *Garza* and *Ward*, Petitioner continues to argue without supporting authorities that "the presumption under A.R.S. § 13-708 was for the court to impose consecutive sentences." (Petition, Doc. 1 at 25.) Petitioner is mistaken.

    Petitioner cites *State v. Gordon*, 161 Ariz. 308, 315, 778 P.2d 1204 (1989) for the proposition that when "a single act harms multiple victims ***may*** be punished by consecutive sentences." (Petition, Doc. 1 at 10 (emphasis added).) Petitioner conflates permission into mandate. In *Gordon*, the Arizona Court was applying the prescription in Ariz. Rev. Stat. § 13-116 that only concurrent sentences be applied when a "single act" is "made punishable in different ways by different sections of the laws." Similarly, the specific quotation, note 5 of the *Gordon* opinion, was a reference to *State v. Gunter*, 132 Ariz. 64, 643 P.2d 1034 (App. 1982), which was applying double jeopardy principles and an earlier version of § 13-116. In each of these opinions, the question was not whether the court was required to apply consecutive sentences, but rather the reverse, whether it was required to apply concurrent sentencing. Having found in both cases that

concurrent sentences were not mandated, neither court went on to hold that consecutive sentences were mandated, merely that they were permissible.

<u>Ability to Argue Acceptance of Responsibility</u> - Petitioner also argues (again, without supporting authorities) that counsel could have argued Petitioner's acceptance of responsibility "with or without the plea." (Petition, Doc, 1 at 25.)  Respondents point to no authority holding to the contrary.

Arizona generally precludes the consideration of a defendant's failure to accept responsibility as grounds for heightening a defendant's sentence, finding it a violation of the Fifth Amendment guarantee against self-incrimination.  *See e.g. State v. Trujillo*, 227 Ariz. 314, 257 P.3d 1194 (App. 2011).  Nonetheless, defendants are permitted to argue acceptance of responsibility as grounds for leniency.  *See e.g. State v. Sansing*, 206 Ariz. 232, 241, 77 P.3d 30, 39 (2003). "A defendant is guilty when convicted and if he chooses not to publicly admit his guilt, that is irrelevant to a sentencing determination. If a defendant admits his guilt, this can be used as additional mitigating evidence, provided the defendant is truly remorseful for his crime."  *State v. Carriger*, 143 Ariz. 142, 162, 692 P.2d 991, 1011 (1984).

Here, however, counsel pointed out that acceptance of responsibility after trial came with risks:

> Q. He could still accept responsibility for what happened?
> A. He could. If you go through the efforts of trial, it's unknown when you go in whether or not you may achieve a better feeling at the outcome of the case or a more hostile feeling. That's a factor that can have some sway.
> Q. You are familiar with the Michelle case which says that the Court cannot use the fact that the defendant chooses to go to trial and maintain his innocence as an aggravating factor against him?
> A. Certainly. It cannot be considered to be an aggravating factor. What I'm suggesting is as a practical reality during the ebb and flow of the trial, there can be factors in emotions generated that .can sway sentencing considerations, not the fact of whether you pursued trial. That, of course, is not a consideration.

(Exhibit SS, R.T. 4/28/09 at 40.)   Thus, counsel's advice could have been based upon the reasonable strategic determination that the evidence presented at trial would create a predisposition in the judge to a harsher sentence, and that pleading guilty prior to trial

would avoid that affect.

Moreover, acceptance of responsibility only after putting the state, the victims, and the witnesses to the burden of a trial, generally engenders less good will than doing so before trial.   Indeed, under the United States Sentencing Guidelines, special preference for an acceptance of responsibility is only available to pre-trial acceptance. *See* U.S.S.G. § 3E1.1, Applic. Note 2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.").   As a practical matter, the kind of honest, remorseful acceptance of responsibility that engenders leniency at sentencing is seldom demonstrated by waiting until after the defendant has rolled the dice at trial and lost, and only then offered to admit his guilt.

<u>Conclusion</u> - Thus, advice by counsel that Petitioner stood a better chance of obtaining concurrent sentencing with a guilty plea, than he did without, was at least a reasonable strategy, if not downright good advice.  Accordingly, this portion of the claim is without merit.

## 6.  Advice on Lack of Evidence of Impairment

Petitioner argues that counsel failed to advise Petitioner about the lack of evidence of impairment.  Petitioner largely stakes this claim on the conclusion that the expert witnesses could only testify that Petitioner was "under the influence" and could not testify that he was "impaired."

Petitioner further argues that the PCR court "accepted that the experts would testify that Mr. Robbins was impaired," (Petition, Doc. 1 at 25), when all the testimony from the experts showed they could not make such a determination.  However, the PCR court's order indicates to the contrary.

The PCR court rejected this claim finding that, although the experts could not provide evidence "of sufficient clarity or certainty to support a finding of impairment,"

there was other "substantial, strong evidence that Mr. Robbins was impaired." (Exhibit XX, M.E. 8/14/09 at 2.)  In particular, the court pointed to Petitioner's "pattern of erratic driving," "driving into oncoming traffic while maintaining highway speeds," and "failure to make all efforts to slow and stop the vehicle" if it were malfunctioning. (*Id.*)

Petitioner complains that the PCR Court somehow failed to understand the claim as being based on counsel's erroneous advice, and failed to address the fact that counsel "believed the case was not defensible because…there was no expert to contest the State's conclusion that Mr. Robbins' was impaired."  (Petition, Doc. 1 at 27.)  However, the PCR court properly recognized that expert opinion was not necessary to the state's case on impairment.  *See state ex re. McDougall v. Albrecht* 168 Ariz. 128, 132, 811 P.2d 791, 795 (App. 1991) ("failure to stop at a red light and speeding coupled with his poor performance of the field sobriety tests and physical signs of impairment constituted substantial evidence of impairment. This evidence alone amply supports the jury verdict"); and *State v. Sup. Court, Cochise County* , 149 Ariz. 269, 279-280, 718 P.2d 171, 181-182 (1986) (discussing portions of the DUI statutes which may be proven by evidence other than chemical analysis).

To be sure, Petitioner proffers alternative, innocent explanations for his driving, including mechanical failure and drowsiness brought on by sleep apnea, insomnia and sedating medications (either over-the-counter Excedrin, or an inadvertantly administered anti-depressant).  But the PCR court found none of those viable, given "the erratic driving or movements of the Defendant's truck…very consistent with the vehicle being operated by an impaired driver [and]…not consistent with control by a dozing driver." (Exhibit XX, M.E. 8/14/09 at 3.)

Given the circumstances of the collision, counsel could have reasonably concluded that the issue of impairment was indefensible, notwithstanding the limits of the expected expert testimony.[3]  For this reason alone, the claim is without merit.

---

[3] Moreover, the toxicologist retained by counsel had opined that he could make finding of impairment based upon retrograded levels of methamphetamine in Petitioner at the time of the collision.  (Exhibit JJ, Griffen Affid., Exhibit C.)

Further, proof of "impairment," a term heavily laden with meaning under Arizona DUI statutes, was necessary only to convict Petitioner of the misdemeanor DUI charges under 28 U.S.C. § 1381(A)(1).   The serious charges, e.g. second degree murder, aggravated assault, etc., did not mandate any proof of "impairment."[4]   The former requires proof that "under circumstances manifesting extreme indifference to human life, the person recklessly engages in conduct that creates a grave risk of death and thereby causes the death of another person."   Ariz. Rev. Stat. §   13-1104(A)(3).   The latter required only proof of a reckless assault using "a deadly weapon or dangerous instrument," Ariz. Rev. Stat. §   13-1204(A)(2), in this case Petitioner's truck.  Even had counsel been able to conjure a defense to the misdemeanor DUI charges (for which he received only 6 months jail time), his advice to Petitioner to plead guilty to the charges in hopes of securing leniency at sentencing on the drastically more serious charges would have been reasonable.

Thus, to advise Petitioner to accept the plea based (in part) on the lack of a defense to the allegations of impairment would not have been deficient performance, and this portion of the claim is without merit.

**7.  Advice on Availability of Mechanical Expert**

Next, Petitioner argues that counsel was ineffective because he improperly advised Petitioner that no mechanical expert was available to support Petitioner's assertion of steering failure.

The PCR Court ruled:

> Mr. Griffen testified that he viewed Mr. Verheggen as a fact witness who would be used as the source of information about the condition of the steering column. Because of the friendship between Mr. Robbins and Mr. Verheggen, Mr. Griffen did not formally categorize Verheggen as an expert, but it is clear that Mr. Griffen intended to call Mr. Verheggen as a fact witness who potentially

---

[4]  Thus, the PCR court opined that the failure to pull over in the face of purported mechanical difficulties sufficiently demonstrated the requisite recklessness.  (Exhibit XX, M.E. 8/14/09 at 2.)  Indeed, simply repeatedly crossing the line without justification would seem to suffice to establish the requisite extreme indifference.

would qualify as an expert as well. Thus, the Defendant's claim on this point appears to involve a semantic, rather than a substantive, distinction. Griffen told the Defendant that there was no "independent" expert on the issue of mechanical failure. That statement was true but did not negate the fact that the issue of mechanical failure would be raised as a defense.

It is also clear, however, that Griffen had justifiable reservations about the credibility of Verheggen either as an expert or fact witness. Griffen knew that Verheggen was taking a number of medications and had problems with his memory. This Court finds that even if Mr. Verheggen should qualify as an expert witness competent to express an opinion regarding the steering column, he would not likely be viewed by the jury as a credible witness.

The Court finds that Mr. Griffen made reasonable, good faith attempts to retain a properly qualified expert witness and was unable to do so. The Court notes that the defense did not present a qualified expert witness who could meaningfully counter the testimony of Jeffrey Browne, testimony that included the opinion that the steering linkage was operational prior to the collision.

(Exhibit XX, ME. 8/14/09 at 4.)

In the face of the PCR court's findings, Petitioner essentially contends that the state court simply got it wrong. Petitioner points to no deficiency in the fact-finding process itself. Thus, Petitioner must show that the facts found were not supported by substantial evidence in the record. *Hibbler*, 693 F.3d at 1146.

Petitioner points to no specific evidentiary deficiencies, but simply restates his claims. (Petition, Doc. 1 at 26.) Those claims fall into three categories, and they will be addressed serially.

First, Petitioner asserts that Verheggen was an expert mechanic available to testify. The PCR court found that counsel recognized the potential for using Verheggen as an expert, but discounted his value. Counsel testified that he viewed Verheggen as a fact witness, and was hesitant to rely on him as an expert, because Verheggen had a close relationship with Petitioner and suffered from memory and credibility issues, the latter being suggestions that Verheggen was a drug dealer. (Exhibit RR, R.T. 4/15/09 at 239-261.) Petitioner offers nothing to counter that testimony. The PCR court's findings in this regard were supported by substantial evidence.

Moreover, to the extent that counsel may have represented to Petitioner that literally no expert was available, thereby excluding Verheggen, the undersigned could

not find, in light of the problems with Verheggen's testimony, that had counsel discussed using Verheggen with Petitioner, that Petitioner would have instead elected to go to trial. The likelihood that Petitioner would have still entered into the plea is further indicated by Petitioner's conduct in the face of his asserted mechanical failure.  As noted by the PCR court, even assuming there was a mechanical failure, Petitioner exhibited the requisite reckless behavior by continuing to drive the vehicle down the highway at a high rate of speed, rather than slowing and/or stopping and/or pulling over to the side of the road.[5]

Further, the testimony of counsel was that Petitioner was well aware of Verheggen's potential use.

> Q. And one of those aspects -- and I think this was addressed in your affidavit as well -- is whether you told Mr. Robbins prior to him pleading guilty that you had no expert to go forward at trial with on the mechanical defect.
> A. No independent expert, meaning Robin and I certainly understood we had Verheggen. What I conveyed to Robin was we don't have an independent guy that we've been trying to secure that's going to come in and support our position. We all knew that we had Verheggen. That was known from day one.
>                      * * *
> Q. I'll hand you this so I can ask you a question while you look at it. Did you not write in your affidavit on paragraph 6 -- that's Exhibit 7 regarding this discussion we're having right now about mechanical malfunction, quote, "While there were lay witnesses to support his claim, Robin was specifically told he had no expert witness to support his claim"?
> A. That's correct. That's consistent with what I'm saying now. We had the Verheggens, which arguably might elevate to the level of something maybe more than a fact witness. Certainly well understood by Robin.
> But we had no independent, unrelated, "nonbuddy," I-spent-the-weekend-at-his-house witness that I was looking for to bolster his position.

(Exhibit RR, R.T. 4/15/09 at 259-260.)

Second, Petitioner asserts that counsel failed to investigate the mechanical defect. Apart from criticism about locating an expert, Petitioner fails to suggest what else

---

[5] Petitioner also argued that he found himself with no choice, due to a large truck behind him and the railings of a bridge he was crossing.  Again, however, the trial court could reasonably reject that explanation, given the potential to simply slow, the elapsed time and distance, as well as the descriptions of the events given by the eyewitnesses.

counsel should have done to investigate. A habeas petitioner may not leave a court to speculate what evidence the deficient investigation would have discovered. In order to prevail on an allegation that defense counsel conducted an insufficient investigation resulting in ineffective assistance, the petitioner must show specifically what that investigation would have produced. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Apart from Verheggen's testimony, Petitioner proffers nothing further that counsel could have offered.

Third, Petitioner asserts that counsel failed to have an expert examine the steering. Petitioner complains that counsel showed one expert pictures, the expert declined to be involved, and that was the end of the investigation. To the contrary, counsel testified that not only had he contacted the reference expert shown photographs, but had pursued other experts.

> Q. If you were not prepared to use [Verheggen] or, as you said, fly solo, who were you going to use on this mechanical issue?
> A. We tried to get backup in the form of somebody to confirm whether there was a defect in the steering column. We were unsuccessful in achieving that.
> Q. That was only based on your associates showing photographs, to your memory, to one person in Flagstaff that declined to make that opinion?
> A. Well, I remember that specific situation. I remember also calling and trying to secure other people who would serve as an expert on the issue and having significant difficulty with that.

(Exhibit RR, R.T. 4/15/09 at 244.)

> Q. Now, going back to the mechanical issue here, you did not do that with the mechanical issue, did you?
> A. We tried to do that, as you know. But we also had backup testimony from the Verheggens that was helpful on the issue. As I said, I would have enjoyed having an expert that was more specific, but we weren't able to secure that.

(*Id.* at 258.) Again, apart from Verheggen, Petitioner fails to proffer any expert who would have testified that the collision resulted from mechanical failure. Petitioner proffers no evidence to counter trial counsel's assertion that none was available.

//

//

**8.  Case Not Defensible**

Finally, Petitioner argues that counsel was ineffective because counsel improperly advised him that the case was "not defensible."  (Petition, Doc. 1 at 27.)

The PCR Court rejected this claim, finding:

> The Court finds that the testimony of defense counsel is credible and that Mr. Robbins knew that his attorney intended to present defenses at trial. The predominant defenses were: (1) the collision was an accident caused by a mechanical defect in the steering system of the Defendant's truck; and (2) Mr. Robbins was not immediately impaired by methamphetamine.

(Exhibit XX, M.E. 8/14/09 at 5.)  Petitioner proffers nothing to show that this finding was unreasonable.

Indeed, Petitioner testified that he had discussed the potential for defenses with counsel:

> Q.  What was it that Mr. Griffen told you he was going to pursue on your behalf in terms of a defense in this case?
> A. He was going to get some experts to do steering column and toxicology report I think, and accident reconstruction.

(Exhibit TT, R.T. 4/29/09 at 38.)

> Q. Did he only discuss the strengths of the state's case against you?
> A. He told me I had a weak case.
> Q. Did he say anything positive about any of your potential evidence?
> A. Basically, if we could get the jury to look away from the methamphetamine, if I wasn't impaired, things like that.

(*Id.* at 54.)

Apart from the unsupported or ineffective defenses discussed hereinabove, Petitioner proffers nothing to show that he in fact had a viable defense to use at trial. Rather than misadvising Petitioner, the record fairly shows that counsel gave Petitioner a clear indication of the hazards he faced at trial.

**9.  Summary**

Petitioner's theme in Ground One is that his guilty plea was involuntary because

counsel failed to properly advise him concerning the advisability and effect of the proffered plea agreement and his opportunities at trial.  However, Petitioner fails to show that in rejecting these claims the PCR court erred legally, or that its factual findings were unreasonable.  Accordingly, Ground One is without merit and must be denied.

## B.  GROUND TWO:  PROCEDURAL DEFAULT

For his Ground Two for relief, Petitioner argues that he was denied due process because there was insufficient evidence to convict him. Petitioner bases this claim on the availability of defenses to and lack of evidence of, his impairment.  (Petition, Doc. 1 at 28-29.)

Respondents argue that the claim was not fairly presented as a federal claim, that presentation of the facts in a related state claim is not fair presentation, and that Arizona's actual innocence claim is permitted based on the absence of a federal habeas claim for actual innocence and thus is not the same as a federal claim of insufficient evidence. (Answer, Doc. 11 at 17-18.)Respondents further argue that the claim is without merit inasmuch as there is no Supreme Court law supporting an actual innocence claim by a defendant who has pled guilty.  (*Id.* at 40 *et seq.*)

## 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th

Cir. 1994).    Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

Petitioner argues that the substance of this claim was raised in his actual innocence claim to the state courts, and despite the absence of citations to federal law, the federal nature of the claim was presented because it was "clear that this was raised as a constitutional error," and because "Arizona state law is the same as federal law on this issue." (Petition, Doc. 1 at 28-29.)  Petitioner further argues that this claim was fairly presented because it was part and parcel of his underlying federal ineffective assistance claim.  (Petition, Doc. 1 at 30.)

**Presentation of Underlying Facts** - Although Petitioner asserted the underlying facts (e.g. the defenses to, and lack of evidence of, impairment), a claim has been fairly presented to the state court only if the petitioner has described both the operative facts **and** the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

Petitioner did not present his current federal legal theory (insufficient evidence) to the state courts.   It is not sufficient that the constitutional nature of the claim was "apparent" from the facts being argued.  "In this circuit, the petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). *See also Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) ("Full and fair presentation additionally requires a petitioner to present the substance of

his claim to the state courts, including a reference to a federal constitutional guarantee ").

**Presentation of Related Actual Innocence Claim** - Petitioner argues that because Arizona state law is the same as federal law on the issue, his claim was fairly presented.  The claim argued by Petitioner to the Arizona Court of Appeals was founded upon Arizona Rule of Criminal Procedure 32.1(h).  (Exhibit YY, Pet. Rev. at 15.)  That rule requires a petitioner to show that he was actually innocent – *i.e.* that "the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt."  The comments to the rule indicate that this provision was added in 2000 because of "the U.S. Supreme Court's pronouncement that claims of actual innocence are not cognizable under the federal habeas corpus remedy. *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853 (1993)."  The Arizona courts denominate the rule as a claim of "actual innocence."  *See e.g. State v. Espinoza*, 2011 WL 2714079 (Ariz.App. 2011); and *State v. Swoopes*, 216 Ariz. 390, 394, 166 P.3d 945, 949 (App. 2007).

The focus of rule 32.1(h) is the petitioner's presentation of information or evidence that would preclude a reasonable jury from convicting.  The evidence considered is not limited to what was presented at trial.  *See State v. Gutierrez*, 229 Ariz. 573, 580, 278 P.3d 1276, 1283 (2012) (considering post-trial DNA evidence, etc.) In contrast, in a federal insufficiency of the evidence claim, the actual innocence of the defendant is irrelevant. *Jackson v. Virginia*, 443 U.S. 307, 323-324 (1979) ("even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar").  Rather, such a claim is founded upon an assertion that the evidence presented at trial made it unreasonable for that jury to have convicted, thus resulting in a denial of due process. *Jackson*, 443 U.S. 307, 324 (1979) (" the applicant is entitled to habeas corpus relief if it is found that ***upon the record evidence adduced at the trial*** no rational trier of fact could have found proof of guilt beyond a reasonable doubt").  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) (distinguishing between insufficiency of the evidence and federal actual innocence claims).

Thus, insufficiency of the evidence is a very different thing from the type of actual innocence claim contemplated under Rule 32.1(h).  And, indeed, Arizona's post-conviction proceeding does not encompass an insufficiency of the evidence claim. "Rule 32.1 defines the scope of the remedy available and specifies the only permissible grounds for relief…[i]nsufficiency of the evidence…[is] not among them." *State v. Salazar*, 122 Ariz. 404, 406, 595 P.2d 196, 198 (App. 1979).  *See  State v. Gutierrez*, 229 Ariz. 573, 580, n. 3, 278 P.3d 1276, 1283, n.3 (2012) (quoting *Salazar* and distinguishing between insufficiency of the evidence claims and claims under Rule 32.1(h).)

Even had Petitioner asserted an insufficiency of the evidence claim in the state court, that would not amount to presentation of the federal insufficiency of the evidence claim he now raises.  "[R]aising a state claim that is merely similar to a federal claim does not exhaust state remedies." *Fields v. Waddington*, 401 F.3d 1018, 1022 (9th Cir. 2005).  "[W]e cannot assume federal claims were impliedly brought by virtue of the fact that they may be 'essentially the same' as state law claims. If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Casey v. Moore*, 386 F.3d 896, 914 (9th Cir. 2004) (citations omitted).  Further, Petitioner bears the burden of showing an  identity between the state and federal claims.  *Id*.  And, the burden of proof of such identity is high. "In the absence of an affirmative statement by the [state supreme court] that it considers a particular state and federal constitutional claim to be identical, rather than analogous ... Petitioner was required to raise his federal claims affirmatively; we will not infer that federal claims have been exhausted." *Fields v. Waddington*,  401 F.3d 1018, 1024 (9th Cir. 2005).  Petitioner proffers nothing to show an identity between the state and federal insufficiency of the evidence claims.

**Presentation of Related Ineffective Assistance Claim** - Finally, Petitioner asserts that an insufficiency of the evidence claim underlay his ineffective assistance claim.  That argument fails on two counts.

First, assertion of an ineffective assistance claim is not sufficient to raise an underlying claim. *See Rose v. Palmateer*, 395 F.3d 1108, 1110-11 (9th Cir. 2005) (holding that a petitioner does not fairly present a Fifth Amendment claim to the state courts when it is merely discussed as one of several issues handled ineffectively by counsel). "While [the ineffective assistance and underlying constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts." *Rose*, 395 F.3d at 1112.

Second, Petitioner's claim underlying his ineffective assistance argument was not that there was insufficient evidence to convict, but that counsel had not adequately pursued or advised Petitioner on the possibility of defenses at trial. To be sure, some of the evidentiary issues would have been similar (e.g. evidence on impairment, mechanical failure, etc.). However, to maintain his ineffective assistance claim, Petitioner was not required to show the net effect on a jury, but upon Petitioner, *i.e.* whether Petitioner would have proceeded to trial rather than pleading guilty had counsel properly pursued and advised Petitioner on the defenses.

Moreover, as discussed more fully below, an insufficiency of the evidence claim relates to a result a trial. Here, there was no trial, but a guilty plea.

**Summary re Exhaustion** – Petitioner failed to fairly present to the Arizona Court of Appeals a federal claim of insufficient evidence. Accordingly, Petitioner's state remedies on the claim were not properly exhausted.

## 2. Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief. Dismissal *with prejudice*

of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 11 at 13, n. 3.)

**Remedies by Direct Appeal** – As a pleading defendant, Petitioner has no right to file a direct appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

**Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."    Ariz.R.Crim.P. 32.2(a)(3).    Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments).    For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id*.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes* 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007). Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among

those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.[6]

Respondents do not offer anything to show that insufficiency of the evidence is the type of claim which does not require a personal waiver.  The undersigned has found no Arizona case law on point. Because it is not clear, this Court cannot find that the claim is procedurally defaulted under Rule 32.2.  *See Cassett v. Stewart*, 406 F.3d 614, 622 (9th Cir. 2005) ("The Arizona state courts are better suited to make these determinations, which may require both a fact-intensive inquiry, and an application of Arizona's complex case law on waiver.").

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bar.   Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

**Exceptions** – Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness bar).   Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appear that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such

---

[6] Some other types of claims addressed by the Arizona Courts in resolving the type of waiver required include: ineffective assistance (waived by omission), *Stewart*, 202 Ariz. at 450, 46 P.3d at 1071; right to be present at non-critical stages (waived by omission), *Swoopes*, 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of interest (waived by omission), *State v. Westmiller*,  2008 WL 2651659 (App. 2008).

1
2
3
4
5
6
7
8
9
10
11

facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:

   (1) The newly discovered material facts were discovered after the trial.

   (2) The defendant exercised due diligence in securing the newly discovered material facts.

   (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

  f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

  g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

  h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

12 Ariz.R.Crim.P. 32.1.

13   Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona

14 prisoner who is simply attacking the validity of his conviction or sentence. Where a

15 claim is based on "newly discovered evidence" that has previously been presented to the

16 state courts, the evidence is no longer "newly discovered" and paragraph (e) has no

17 application. Here, Petitioner has long ago asserted the facts underlying his insufficiency

18 of the evidence claim. Petitioner has presented no facts to suggest that Paragraph (f)

19 would apply. Paragraph (g) has no application because Petitioner has not asserted a

20 change in the law since his last PCR proceeding. Finally, paragraph (h), concerning

21 claims of actual innocence, has no application to Petitioner's procedural claims of

22 insufficiency of the evidence at trial.

23   Therefore, none of the exceptions apply, and Arizona's time bar would prevent

24 Petitioner from returning to state court. Thus, Petitioner's claims are all now

25 procedurally defaulted.

26

27 **3.  Cause and Prejudice**

28   If the habeas petitioner has procedurally defaulted on a claim, or it has been

32

procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).   The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Here, Petitioner does not proffer any good cause to excuse his failures to exhaust and procedural defaults on Ground Two.  The undersigned finds none.

**Prejudice** -   Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Moreover, as discussed hereinafter, the undersigned finds the claim to be without merit.  Accordingly, Petitioner has also failed to show prejudice.

**Actual Innocence** - The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the

1    Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion

2    outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. &*

3    *Proc.*, §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly

4    limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir.

5    2008).

6         Although Petitioner argued his actual innocence to the state courts, Petitioner

7    makes no claim of his actual innocence in this proceeding.

8

9    **3.  Conclusion re Exhaustion and Procedural Default**

10        Petitioner's claim denial of federal due process as a result of insufficiency of the

11   evidence was not fairly presented to the state courts, thus his state remedies were not

12   properly exhausted.  He is now barred under Arizona's time bar from seeking state court

13   review of this claim, and thus the claim is procedurally defaulted.  Petitioner has failed to

14   show cause and prejudice, and has not asserted actual innocence to avoid his procedural

15   default.  Accordingly, Petitioner's Ground Two must be dismissed with prejudice.

16

17   **C.  GROUND TWO: MERITS**

18        Even if Petitioner's Ground Two were not procedurally defaulted, it is without

19   merit.  Petitioner argues that there was insufficient evidence to convict, resulting in a

20   denial of due process, citing *Jackson v. Virginia*, 443 U.S. 307 (1979).[7]  Petitioner

21   concedes that because there was no trial and he pled guilty this is not the "usual lack of

22   evidence claim" being raised.  (Petition, Doc, 1 at 29.)  Indeed, Petitioner proffers no

23   authority, state[8] or federal, to support the existence of an insufficiency of the evidence

24   ─────────────────────

25   [7] Respondents convincingly observe (Answer, Doc. 11 at 41) that Petitioner's shift from
     his assertion of actual innocence in the state courts to insufficiency of the evidence in the
     federal court appears to stem from the lack of any federally recognized constitutional
26   claim of actual innocence. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993).

27   [8] *See State v. Wood*, 2012 WL 4859122 (Ariz.App. 2012) (finding that guilty plea
     precludes a claim of innocence, but recognizing the ability to attack the sufficiency of
28   factual basis and assuming without deciding that a claim of actual innocence under Rule
     32.1(h) could be brought).

1  claim in the context of a guilty plea.[9]

2      Generally, a defendant entering a guilty plea is deemed to have admitted all of the

3  elements of the crime to which he pleads.   The plea itself, not some modicum of

4  evidence, supports the conviction.

> A plea of guilty differs in purpose and effect from a mere admission
> or an extrajudicial confession; it is itself a conviction. Like a verdict
> of a jury it is conclusive. More is not required; the court has nothing
> to do but give judgment and sentence. Out of just consideration for
> persons accused of crime, courts are careful that a plea of guilty
> shall not be accepted unless made voluntarily after proper advice
> and with full understanding of the consequences. When one so
> pleads  he may be held bound.

10  *Kercheval v. U.S.*, 274 U.S. 220, 223-24 (1927).

11      The Constitution does not mandate that a factual basis (or "sufficient evidence")

12  support a guilty plea, as long as it is entered knowingly and voluntarily.   *See Loftis v.*

13  *Almager*, --- F.3d ---, 2012 WL 6183531, 12 Cal. Daily Op. Serv. 13, 473 (9th Cir.

14  12/11/12).   The *Loftis* court observed (albeit in the more problematic context of a no-

15  contest plea) that a defendant "cannot obtain habeas relief because the state trial court's

16  failure to find a factual basis for his no contest plea—unaccompanied by protestations of

17  innocence—does not present a constitutional issue cognizable under 28 U.S.C. § 2254."

18  *Id.*   "[T]he due process clause does not impose on a state court the duty to establish a

19  factual basis for a guilty plea absent special circumstances." *Rodriguez v. Ricketts*, 777

20  F.2d 527, 528 (9th Cir. 1985) (noting a protestation of innocence at the time of plea as a

21  potential special circumstance).

22      Here, Petitioner entered an unadorned plea of guilty.   No evidence is required,

23  under the Constitution, to support his conviction.

24      Petitioner attempts to avoid the effect of his guilty plea by again asserting it was

25  not knowingly and voluntarily entered.   (Petition, Doc. 1 at 29-30.)   Those claims are

---

26  [9] Respondents argue *inter alia* that the claim is without merit because habeas relief must
27  be founded upon Supreme Court law, citing 28 U.S.C. § 2254(d).  (Answer, Doc. 11 at
   40, 42.)  However, that section only applies to a "claim that was adjudicated on the
28  merits in State court proceedings."  As discussed hereinabove, Petitioner never presented
   a claim of insufficiency of the evidence to the state courts.

rejected in connection with Ground One.

Accordingly, Ground Two is without merit, and if not subject to dismissal with prejudice as procedurally defaulted, it must be denied.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being  resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the

district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Ground Two (Insufficiency of the Evidence) of the Petitioner's Petition for Writ of Habeas Corpus, filed March 26, 2012 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of the Petitioner's Petition for Writ of Habeas Corpus, filed March 26, 2012 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any

findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: February 11, 2013

12-8056r RR 13 01 18 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge

38